1  Dominica C. Anderson (SBN 2988)
   Daniel B. Heidtke (SBN 12975)
2  DUANE MORRIS LLP
   100 N. City Parkway, Suite 1560
3  Las Vegas, NV  89106
   Telephone: 415.957.3179
4  Facsimile:  702.974.1058
   Email:  dcanderson@duanemorris.com
5          dbheidtke@duanemorris.com

6  Russell W. Roten (*Admitted Pro Hac Vice*)
   Jeff D. Kahane (*Admitted Pro Hac Vice*)
7  DUANE MORRIS LLP
   865 South Figueroa Street, Suite 3100
8  Los Angeles, California 90017-5450
   Telephone: +1 213.689.7400
9  Fax: +1 213.689.7401
   Email: rwroten@duanemorris.com
10         jkahane@duanemorris.com

11 Attorneys for Plaintiffs *Ohio Security Insurance Company,*
   *Peerless Indemnity Insurance Company,*
12 *The Ohio Casualty Insurance Company, and*
   *West American Insurance Company*

13

## UNITED STATES DISTRICT COURT

14

### DISTRICT OF NEVADA

15

| | |
|---|---|
| 16  In re: | |
| 17       AFFINITYLIFESTYLES.COM, INC., | Case No.:_____ |
| 18            Debtor. | Bankruptcy Case No.:  BK-S-21-14099-NMC |
| 19  ――――――――――――――――――――― | |
| 20  OHIO SECURITY INSURANCE COMPANY, a company organized under the laws of the | Adv. Proc. No.: 23-01082-NMC |
| 21  State of New Hampshire; PEERLESS INDEMNITY INSURANCE COMPANY, a company organized under the laws of the State | Chapter 7 |
| 22  of Illinois; THE OHIO CASUALTY INSURANCE COMPANY, a company | **OHIO SECURITY INSURANCE** |
| 23  organized under the laws of the State of New Hampshire; WEST AMERICAN INSURANCE | **COMPANY, PEERLESS INDEMNITY INSURANCE COMPANY, THE OHIO** |
| 24  COMPANY, a company organized under the laws of the State of Indiana, | **CASUALTY INSURANCE COMPANY, AND WEST AMERICAN INSURANCE** |
| 25            Plaintiffs, | **COMPANY'S MOTION TO WITHDRAW THE REFERENCE;** |
| 26  | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| 27       vs. | **MOTION TO WITHDRAW THE REFERENCE; PROOF OF SERVICE** |
| 28  AFFINITYLIFESTYLES.COM, INC. d/b/a REAL WATER, a Nevada corporation; REAL | |

1   WATER, INC., a Wyoming corporation; REAL
    WATER OF TENNESSEE, LLC, a Delaware
2   limited liability company; and DOES 1 through
    100, inclusive,
3
4                           Defendants.

5              **MOTION TO WITHDRAW THE REFERENCE**

6      **RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE.**

7           Plaintiffs, Ohio Security Insurance Company, Peerless Indemnity Insurance Company, The

8    Ohio Casualty Insurance Company, and West American Insurance Company (collectively,

9    "Insurers"), by and through their undersigned attorneys, hereby move to withdraw the reference of

10   this Adversary Proceeding to the District Court ("Motion"), and in support thereof, respectfully state

11   as follows.

12          The Motion is based on the Memorandum of Points and Authorities, the papers and pleadings

13   on file in this case, and such other evidence that may be presented to the Court at the hearing on the

14   Motion.

15    Dated: May 11, 2023              **DUANE MORRIS LLP**

16
17                                     By:   /s/ *Dominica C. Anderson*
                                             Dominica C. Anderson (SBN 2988)
18                                           Daniel B. Heidtke (SBN 12975)
                                             Russell W. Roten (*Admitted Pro Hac*
19                                           *Vice*)
                                             Jeff D. Kahane (*Admitted Pro Hac Vice*)
20
                                       Attorneys for Plaintiffs *Ohio Security*
21                                     *Insurance Company, Peerless Indemnity*
                                       *Insurance Company, The Ohio Casualty*
22                                     *Insurance Company, and West American*
                                       *Insurance Company*
23
24
25
26
27
28

                                  2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Insurers request that the Court withdraw the reference of this Adversary Proceeding.  First, the Bankruptcy Court does not have final adjudicative authority over the claims.  Further, the Ninth Circuit has established the following factors for the Court to consider when deciding whether to withdraw the reference.  Those factors are: (1) whether the proceeding is core or non-core; (2) whether the claim is legal or equitable; (3) the most efficient use of judicial resources; (4) whether the claim is triable by jury; (5) reduction of forum shopping; (6) conservation of estate and non-debtor resources; and (7) uniformity of bankruptcy administration.

All of the factors either favor withdrawal or are neutral.  All of the claims in this case arise under state law, and hence are only within the Bankruptcy Court's non-core jurisdiction.  The claims, although seeking declaratory relief, are legal claims.  Because the Bankruptcy Court for the District of Nevada ("Bankruptcy Court") can neither enter final orders in non-core matters nor conduct jury trials, withdrawal would conserve judicial resources.  Insurers are entitled to a jury trial as to the claims in their Adversary Proceeding Complaint (defined below).  Forum shopping is not at issue because the Insurers have moved to withdraw the reference early in this case, before any adverse rulings have been entered; in fact, withdrawal to this Court, which must ultimately decide the claims, mitigates against any finding of forum shopping.  Because withdrawal is more efficient when only non-core claims are present and a party has a jury trial right, withdrawal also conserves the parties' resources.  Finally, because there are only non-core claims in this case, the uniformity of bankruptcy administration is not at issue.

For the reasons set forth above, and as discussed in detail below, Insurers have shown cause to have the reference withdrawn, and accordingly respectfully request that the Court grant the Motion.

### II.    FACTUAL BACKGROUND

Insurers filed a complaint ("Adversary Proceeding Complaint") initiating an adversary proceeding entitled *Ohio Security Insurance Company, et al. v. Affinitylifestyles.com, Inc. d/b/a Real Water, et al.* ("Adversary Proceeding") in the Affinitylifestyles.com, Inc. bankruptcy proceeding, case number 21-14099.

Insurers initiated the Adversary Proceeding against Affinitylifestyles.com, Inc. d/b/a Real Water ("Affinity"), a Nevada corporation; Real Water, Inc. ("RWI"), a Wyoming corporation; and Real Water of Tennessee, LLC ("RWT"), a Delaware limited liability company (collectively, "Real Water Entities") seeking declaratory relief to resolve their rights and obligations under certain insurance policies issued by the Insurers.

Real Water Entities manufactured, marketed, and/or sold "Re$^2$al Alkalized Water," alkaline water, *i.e.*, water with a pH level above a neutral pH of 7 ("Real Water"). In general, "pH" (an abbreviation for "potential hydrogen") is a scale used to indicate whether an aqueous solution is acidic (*i.e.*, pH less than 7), neutral (*i.e.*, pH of 7), or alkaline (*i.e.*, pH of greater than 7). For instance, and on information and belief, vinegar has an approximate pH of 2.5, whereas bleach has an approximate pH of 13.

Approximately 90 claimants, across 28 lawsuits, have sued the Real Water Entities ("Underlying Actions") alleging that they were injured by consuming Real Water. The underlying plaintiffs allege that Real Water was unsafe due to "inherent flaws in the manufacturing process." ("Underlying Actions"). As alleged in several of the Underlying Actions:

> The multiple cases of liver damage prior to the end of August 2020, when the Desert Inn plant was closed and the Henderson and Mesa plants were opened, proves that the water was contaminated by common manufacturing flaws and equipment failures that occurred at both plants as opposed to something geographically unique at a specific plant location.

In the Adversary Proceeding, the Insurers seek a judicial declaration of the parties' rights, duties and obligations under the Insurers' policies with respect to the defense and indemnity of Real Water Entities in the Underlying Actions.

There is diversity of citizenship between the Insurers and Real Water pursuant to 28 U.S.C. § 1332. *See* Adversary Proceeding Complaint at ¶¶ 12-18.[1]

---

[1]    Insurers are organized under the laws of the State of New Hampshire, Indiana, or Illinois, with their principal place of business in Boston, Massachusetts. The Real Water Entities are corporations organized and existing under the laws of Nevada, Wyoming, and Delaware and Real Water's principal place of business is in Henderson, Nevada.

DM1\14138279.1

In the Adversary Proceeding Complaint, the Insurers have made a jury trial demand.  *See* Adversary Proceeding Complaint at ¶ 22.

Subject to their terms, conditions, and exclusions, Peerless Indemnity Insurance Company issued to Affinity, RWI and/or RWT four primary policies with policy number CBP1031766 ("Peerless Primary Policies"); West American Insurance Company issued two primary policies, with policy numbers BKW (17) 56 93 29 40 and BKW (18) 56 93 29 40 ("West American Primary Policies"); and Ohio Security Insurance Company issued two primary policies, with policy numbers BLS (20) 59 96 11 64 and BLS (21) 59 96 11 64 ("Ohio Security Primary Policies").  The foregoing policies are collectively referred to herein as the "Primary Policies."  Subject to their terms, conditions, and exclusions, the Primary Policies contain limits of $1 million for bodily injury and property damage and a $2 million general aggregate.

In addition to the primary policies discussed immediately above, subject to their terms, conditions, and exclusions, Peerless Indemnity Insurance Company issued umbrella policies with policy numbers CU8899267, CU8899267, CU8899267, and CU8899267 ("Peerless Umbrella Policies"); and The Ohio Casualty Insurance Company issued umbrella policies with policy numbers USO (17) 56 93 29 40 and USO (18) 56 93 29 40 ("Ohio Casualty Umbrella Policies").  The foregoing policies are collectively referred to herein as the "Umbrella Policies," and with the Primary Policies are collectively referred to as the "Policies."  Subject to their terms, conditions, and exclusions, the Umbrella Policies contain limits of $1 million each occurrence and a $1 million aggregate.

Real Water Entities tendered the defense of the Underlying Actions to Insurers beginning in March 2021.

Insurers accepted, pursuant to a reservation of rights, Affinity's, RWI's and RWT's tender of defense in certain of the Underlying Actions.  Insurers denied coverage for certain of the Underlying Actions.

Insurers seek a determination of their rights and duties under the Policies including, without limitation:

1.   A judicial declaration that, if the damages at issue in the Underlying Actions arose from an "occurrence," there was one "occurrence" in total;

2.      Any and all judicial determinations that naturally flow from a ruling on the "occurrence" issue, including, without limitation, the resulting application of specific policy terms in certain Policies;

3.      A judicial declaration that the Policies providing coverage during the 2/4/2012-2/3/2016 policy periods are not implicated by the allegations in the Underlying Actions and, therefore, do not provide coverage;

4.      Any and all judicial determinations that naturally flow from a ruling that the Policies providing coverage during the 2/4/2012-2/3/2016 policy periods are not implicated by the allegations in the Underlying Actions and, therefore, do not provide coverage;

5.      A judicial determination that the "cooperation clauses" in the Policies were breached and, as a result, Insurers are released from any further obligations owed under the Policies to Real Water Entities;

6.      A judicial declaration that attorneys' fees and costs awarded to plaintiffs in the Underlying Actions are not covered under the Policies; and

7.      A judicial declaration that any punitive damages that may be awarded in the Underlying Actions are not covered under the Policies.

The requests for judicial relief in 1 – 7 above are defined herein as "Claims."

## III.    <u>APPLICABLE LAW</u>

"Permissive withdrawal of a reference is governed by the first sentence of Section 157(d)[.]" *Green v. FDIC (In re Tamalpais Bancorp)*, 451 B.R. 6, 10-11 (N.D. Cal. 2011) (holding that a determination of who owns funds under a prepetition contract to be non-core) (citing 28 U.S.C. § 157(d)).  That section states, in pertinent part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.…

28 U.S.C. § 157(d).  In keeping with this procedure, the Supreme Court promulgated Federal Rule of Bankruptcy Procedure 5011(a), which states: "A motion for withdrawal of a case or proceeding shall be heard by a district judge."  *Id.*[2]

The Bankruptcy Code does not define cause, so cause must be determined on a case-by-case basis.  *In re Richter*, 525 B.R. 735, 758 (Bankr. C.D. Cal. 2015) (citing *Christensen v. Tucson Estates, Inc. (In re Christensen)*, 912 F.2d 1162, 1166 (9th Cir. 1990).  In the Ninth Circuit, to find cause to withdraw the reference, the Court should consider (1) whether the proceeding is core or non-core; (2) whether the claim is legal or equitable; (3) the most efficient use of judicial resources; (4) whether the claim is triable by jury; (5) reduction of forum shopping; (6) conversion of estate and non-debtor resources; and (7) uniformity of bankruptcy administration.  *See Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993)); *Vacation Vill., Inc. v. Clark County*, 497 F.3d 902, 914 (9th Cir. 2007) (citing *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002); *In re Moon*, 2023 WL 1779643, at *4 (D. Nev. Feb. 6, 2023); *Rosenberg v. Harvey A. Bookstein*, 479 B.R. 584, 587 (D. Nev. 2012).

## IV.  <u>THE MOTION IS TIMELY FILED</u>

"The Judicial Code provides no bright line rule regarding time for filing a motion to withdraw a reference."  *Transcon. Refrigerated Lines, Inc. v. New Prime, Inc.*, 2013 U.S. Dist. LEXIS 157958, *10 (M.D. Pa. Nov. 5, 2013).  "[C]ourts have judged the timeliness of such motions by looking at when the movant first became aware of the facts or circumstances making withdrawal possible under § 157(d)."  *In re Allegheny Health Education and Research Foundation*, 2006 U.S. Dist. LEXIS 91548, *4-5 (W.D. Pa. Dec. 19, 2006) (citing *In re Mahlmann*, 149 B.R. 866, 869 (N.D. Ill. 1993)).

Courts have held that a motion to withdraw is timely if it is filed at the "first reasonable opportunity."  *Matter of Lissner Corp.*, 115 B.R. 604, 608 (N.D. Ill. 1990); *In re Baldwin-United*

---

[2]     The District of Nevada Local Rules of Bankruptcy Practice, Rule 5011 states, "A request for withdrawal of the reference in whole or in part of a matter referred to the bankruptcy judge, other than a request by the bankruptcy court on its own or the automatic withdrawal as provided in a jury case by LR 9015(e), must be by motion and filed timely with the clerk of the bankruptcy court […]. Upon the filing of a motion to withdraw, all pleadings and papers with respect to the motion to withdraw the reference must be filed in the district court."

*Corp.*, 57 B.R. 751, 753 (S.D. Ohio 1985); *see also Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1007, n.3 (9th Cir. 1997).  A determination of whether a party has invoked 28 § 157(d) "as soon as possible" or "at the first reasonable opportunity" must be made upon the particular facts of each case.  *Id.*  (holding that motion to withdraw filed seven weeks after trustee provided notice of grounds for withdrawal to be timely) (citing *In re Chateaugay Corp.*, 104 B.R. 622, 623-24 (S.D.N.Y. 1989)).  Other courts have found longer periods to be reasonable, especially when, as here, no prejudice to other parties will occur.  *See, e.g., Burger King Corp. v. B-K of Kansas, Inc.*, 64 B.R. 728, 730-31 (D. Kan. 1986) (although parties seeking withdrawal based upon federal law implicated by their own counterclaims waited for ten months after the counterclaims were filed before filing motion to withdraw, motion was nonetheless timely where there was no prejudice to other party); *Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y. 1986) (in the absence of prejudice, defendants' motion to remove adversary proceeding was timely although filed more than one year after complaint and after defendants had already pursued unsuccessful motion to dismiss).

The Motion is being filed concurrently with the Insurers' Adversary Proceeding Complaint, which is the first reasonable opportunity available to the Insurers.  Hence, the Motion is timely.

## V.   THERE IS CAUSE TO WITHDRAW THE REFERENCE

### A.   The Bankruptcy Court Cannot Enter a Final Order on the Claims

#### 1.   Article III of the U.S. Constitution Limits the Bankruptcy Court's Authority to Decide Matters of Private Right

The Bankruptcy Court cannot enter a final decision on any of the Claims.  Article III of the United States Constitution provides:

> The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish. The judges, both of the supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office.

U.S. Const. art. III, § 1.

Article III constitutes "an inseparable element of the constitutional system of checks and balances" that must "be jealously guarded."  *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982) (plurality opinion).  It prevents Congress from "withdraw[ing] from

[Article III] judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856). Article III "serves both to protect 'the role of the independent judiciary within the constitutional scheme of tripartite government' and to safeguard litigants' 'right to have claims decided before judges who are free from potential domination by other branches of government.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986) (citations omitted). "In sum, our Constitution unambiguously enunciates a fundamental principle—that the 'judicial Power of the United States' must be reposed in an independent Judiciary." *Northern Pipeline*, 458 U.S. at 60.

State-created private right disputes lie at the center of Article III adjudication. *Id.* at 70. A private right is one involving "the liability of one individual to another under the law as defined." *Stern v. Marshall*, 564 U.S. 462, 489 (2011). These rights "may not be removed from the jurisdiction of Article III courts". *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014). Contract disputes, such as insurance coverage cases, are private right disputes. *Northern Pipeline*, 458 U.S. at 71; *see In re SRC Holding Corp.,* 545 F.3d 661, 666 (8th Cir. 2008).[3] "[T]here is no doubt that the bankruptcy judges … are not Art. III judges." *Id.* at 61. They lack the constitutional authority to enter final judgments on state law claims. *Stern v. Marshall*, 564 U.S. 462, 469 (2011). Absent knowing and voluntary consent by the parties, an Article III Court must decide such claims. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015). Insurers have not granted and will not grant such consent here.

"Under *Stern*, Article III … determines the bankruptcy court's adjudicative authority. Thus, a district court . . . must first determine whether or not the bankruptcy court has constitutional authority to enter final judgment on the claim . . . . To the extent the core/non-core distinction held a privileged position among the *Orion* factors before *Stern*, this is no longer the case." *In re Lyondell*

---

[3]   By contrast, a non-Article III tribunal may resolve a right closely integrated into a public regulatory scheme. *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 594 (1985). The filing of a bankruptcy case itself, in contrast to the Claims, is such a public right. "[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages[.]" *Northern Pipeline Const. Co.*, 458 U.S. at 71.

9

*Chem. Co.*, 467 B.R. 712, 719 (S.D.N.Y. 2012); *see also Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 486 B.R. 579, 582 n.1 (S.D.N.Y. Feb. 6, 2013) (quoting *Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp. 2d 526 (S.D.N.Y. 2012)).  The core/non-core distinction no longer holds a "privileged position" because there are some core matters over which the Bankruptcy Court does not have final adjudicative authority.  *See, e.g., Stern*, 564 U.S. at 484; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989).

Consistent with this principle, the Supreme Court set forth three instances where a bankruptcy court may adjudicate a claim finally: (1) if the claim involves a public right; (2) if the process of adjudicating the creditor's proof of claim would necessarily resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court.  *Stern*, 564 U.S. at 478-82, 488-99; *accord, Lyondell*, 467 B.R. at 720 (applying these three considerations in deciding motion to withdraw bankruptcy reference).

None of the foregoing three instances exists here, and therefore the Bankruptcy Court may not finally adjudicate the Claims.

First, none of the Claims implicates public rights.  *See, e.g., Stern,* 564 U.S. at 484; *Beacon Theatres v. Westover*, 359 U.S. 500, 506 (1959).  All of the Claims are at common law or in equity.  The Claims involve disputes between private persons over contract interpretation, and hence are matters of private right that the Bankruptcy Court may not adjudicate.

Second, the Insurers are not creditors of Real Water, hence, there is no proof of claim to be adjudicated, nor any counterclaim.

Third, the Insurers have not consented to final adjudication by the Bankruptcy Court.

The Bankruptcy Court cannot make final determinations on any of the Claims.  It can only enter proposed findings (on undisputed facts) and legal conclusions, all of which must come to the Court for review and entry of a final order.  *See* 28 U.S.C. § 157(c).  As discussed below, once it is determined that a proceeding is non-core (which is the case here), principles of judicial economy and efficiency are of paramount importance, given that the Bankruptcy Court can neither enter final orders on the Claims, nor can it conduct jury trials without the parties' consent.  *Roman Catholic Diocese of Rockville Ctr. v. Arrowood Indem. Co.*, Case No. 20-cv-11011, 2021 U.S. Dist. LEXIS 94233

(S.D.N.Y. May 17, 2021) (granting a motion to withdraw the reference of an adversary proceeding involving a non-core insurance coverage dispute and noting that where a bankruptcy court is limited to submitting proposed findings of fact and conclusions of law, it generally is "inefficient to allow the proceedings to go forward, knowing that they will have to be substantially repeated") (citation omitted). Therefore, the Court should grant the Motion and withdraw the reference of the Adversary Proceeding.

**B.        The Claims Are Only within the Bankruptcy Court's Non-Core Jurisdiction**

Two statutes, 28 U.S.C. §§ 157(a) and 1334, allow District Courts to refer proceedings arising in, arising under, or related to a bankruptcy, to a Bankruptcy Court. *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130 (9th Cir. 2010) (citing 28 U.S.C. § 1334(b)). With limited exceptions not at issue here, 28 U.S.C. § 1334 provides that bankruptcy courts have "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id*. As discussed below, 28 U.S.C. § 157 determines what kind of jurisdiction a bankruptcy court will have over a matter.

**1.        Core Jurisdiction**

"[C]haracterization of the claims as core or non-core [under 28 U.S.C. § 157(b)] is useful before considering the [other *Sec. Farms*] factors." *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc*., 355 B.R. 214, 223 (D. Haw. 2006).

Matters within a Bankruptcy Court's core jurisdiction must arise under the Bankruptcy Code, or could only arise in a bankruptcy case. "[A] core proceeding is one that "invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Ray*, 624 F.3d at 1131 (citing *Gruntz v. County of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000)). While the list of core proceedings provided in 28 U.S.C. § 157(b)(2) is not exhaustive, those provisions must be read narrowly so as to avoid "constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent." *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004); *see also In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986) ("[A] court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems."); *Thomas v. Union Carbide Agric. Prods.*

11

*Co.*, 473 U.S. 568, 584, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985) ("Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law . . ..") (characterizing the holding of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982)).  Conversely, "the collateral consequences of state law actions do not necessarily make those actions core."  *Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC)*, 2015 U.S. Dist. LEXIS 170274, 14-15 (S.D.N.Y. Dec. 21, 2015) (citing *Orion*, 4 F.3d at 1101).

"A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code."  *Ray*, 624 F.3d at 1131; *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 737 (9th Cir. 2009).  "A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code.  *Ray*, 624 F.3d at 1131 (citing *Marshall*, 600 F.3d at 1054).

A Bankruptcy Court can enter final orders only on matters within its core jurisdiction.  The Supreme Court clarified the Bankruptcy Court's authority to enter a final judgment as follows: "If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court."  *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2171-72, 189 L. Ed. 2d 83 (2014).

### 2.     Non-Core, Related-to Jurisdiction

A Bankruptcy Court has "non-core" or "related-to" jurisdiction with respect to matters related-to cases under Title 11.  28 U.S.C. § 157(b)(1).  Such jurisdiction includes any proceeding where "the outcome of the proceeding could conceivably … alter the debtor's rights, liabilities, options, or freedom of action . . . and … impacts upon the handling and administration of the … estate".  *Fietz v. Great W. Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988).  "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'"  *Sec. Farms*, 124 F.3d at 1008 (citing *Castlerock*, 781 F.2d at 162).  Thus, while a claim for breach of contract against a trustee arising from a post-petition contract is a core

proceeding because a claim against a trustee could only exist in a bankruptcy case, a claim arising from a pre-petition or post-petition contract against a debtor is a non-core proceeding.  The Polices at issue here are all pre-petition.  *Compare Harris*, 590 F.3d at 740 with *Ray*, 624 F.3d at 1131-33.  A Bankruptcy Court cannot enter a final order on matters within its non-core jurisdiction.  28 U.S.C. § 157(c)(1); *see also e.g.*, *Dunmore*, 358 F.3d at 1109.

### 3.  The Claims Are Non-Core

Each Claim raises only non-core issues.

The Claims solely consist of determinations of the rights and obligations of the parties under the Policies.  Such issues involve only state law determinations of private contractual rights.  Such issues are not core because: (a) they do not involve "a cause of action created or determined by a statutory provision of the Bankruptcy Code"; and (b) are not "an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code."

All of the Claims are outside the Bankruptcy Court's core jurisdiction.  They neither arise under Title 11, nor arise in a Title 11 case.  To the contrary, all of the Claims are state law insurance coverage claims.  *See In re Lehman Bros. Holdings Inc.*, 502 B.R. 376, 382-383 (Bankr. S.D.N.Y. 2013) (holding that a breach of contract claim arising under New York law was considered a non-core matter); *see also Orion*.  A claim for breach of contract is a state law claim that falls only within the Bankruptcy Court's non-core jurisdiction.  *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir. 1986) ("State law contract claims that arguably fall within these catch-all provisions [*i.e.*, 28 U.S.C. § 157(A) and (O)] have been held to be 'noncore' 'related proceedings' under § 157(c).") (citing *K-Rom Construction Corp. v. Behling (In re K-Rom Construction Corp.)*, 46 Bankr. 745, 749 (S.D.N.Y. 1985); *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 Bankr. 464, 465-66 (D. Mass. 1985); *Cameron v. Anderson (In re American Energy, Inc.)*, 50 Bankr. 175, 178-79 (Bankr. D.N.D. 1985); *Morse Electric Co., Inc. v. Logicon, Inc. (In re Morse Electric Co., Inc.)*, 47 Bankr. 234, 237 (Bankr. N.D. Ind. 1985)).

The Claims each seek a determination of the Insurers' and Real Water's rights and obligations under the Policies, which requires an interpretation of pre-petition contracts.  Thus, these questions

come within the Bankruptcy Court's non-core jurisdiction. *Ray*, 624 F.3d at 1131-33; *see Longview Power, LLC v. First Am. Title Ins. Co. (In re Longview Power, LLC)*, 515 B.R. 107, 115 (Bankr. D. Del. 2014) (concluding coverage dispute was non-core, stating "[t]he bottom line is that the coverage dispute implicates state law rights and defenses."). The Claims are also non-core because any claim involving interpretation of the Policies could arise outside of the Bankruptcy Court. *See, e.g., Ashland Inc. v. G-I Holdings Inc. (In re G-I Holdings, Inc.)*, 564 B.R. 217, 251 (Bankr. D.N.J. 2016); *see also In re John A. Rocco Co.*, No. 12-01277 (NLW) 2015 WL 1727474 at *8 (Bankr. D.N.J. April 13, 2015) ("[T]the bottom line is that [the complaint] present[s] the kind of claims that the Supreme Court held bankruptcy courts could not adjudicate to final judgments in *Marathon*. The question of coverage under the policies is entirely one of state law, and whatever rights the Debtor may have to coverage under the policies arose independent of and antecedent to the bankruptcy."). Such matters fall solely within the Bankruptcy Court's non-core jurisdiction. *Harris*, 590 F.3d at 740.

Thus, this factor weighs in favor of withdrawal of the reference.

## C.    The Insurers Are Entitled to a Jury Trial

Insurers are entitled to a jury trial on the Claims.

It is well settled that "the right to a jury trial in the federal courts is to be determined as a matter of federal law…." *Simler v. Conner*, 372 U.S. 221, 222 (1963) (*per curiam*). This is true regardless of whether the claim arises under state law, *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 240 (2d Cir. 2001), and "even when a state statute or state constitution would preclude a jury trial in state court." *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 230 (8th Cir. 1996) (citations omitted). The right to a jury trial in a declaratory relief action is also preserved in federal court. *Beacon*, 359 U.S. at 504-08.

Litigants in federal court are entitled to a jury trial on all legal claims with disputed facts. The Seventh Amendment provides as follows: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved…." USCS Const. Amend. 7. The Supreme Court has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera*

*v. Nordberg*, 492 U.S. 33, 41 (1989) (citing *Parsons* v. *Bedford*, 3 Pet. 433, 447 (1830)).  Thus, the Seventh Amendment guarantees the absolute right to a jury trial on legal claims wherever they are brought - even those brought in Bankruptcy Court.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989).  Moreover, the Bankruptcy Court cannot conduct a jury trial without consent.   28 U.S.C. § 157(e); *see also Orion Pictures*, 4 F.3d at 1101; *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990).  Thus, the Court must conduct such a trial.

While contracts are interpreted as a matter of law, if contract interpretation depends upon the credibility of extrinsic evidence, then it is a matter for a jury.  *Welles v. Turner Entm't Co.*, 503 F.3d 728, 737 (9th Cir. 2007) (where contractual language is ambiguous, *i.e.*, susceptible of at least two reasonable interpretations, and the parties' intent is at issue, contract interpretation depends on the credibility of extrinsic evidence, the weighing of which is a task for the jury).  This Adversary Proceeding involves issues of contract interpretation.  Thus, Insurers are entitled to a jury trial on the Claims.

### D.    The Claims Are Legal Rather than Equitable

A request for declaratory relief "may be legal or equitable depending on the 'basic nature of the underlying issues.'"  *Mile High Indus. v. Cohen*, 222 F.3d 845, 856 (10th Cir. 2000) (quoting *Fischer Imaging Corp. v. GE*, 187 F.3d 1165, 1168 (10th Cir. 1999)).

An action for declaratory relief that seeks a ruling as to the parties' respective rights under a contract is inherently legal.  *Beacon Theatres v. Westover*, 79 S.Ct. 948, 953 (1959).

> [T]he issue posed to us is whether a declaratory judgment claim based on a contract, which would otherwise clearly be a legal claim entitling the plaintiff to a jury, becomes an equitable claim when filed in anticipation of harm but before harm has been suffered. Our answer is 'no' unless special circumstances exist which indicate that a suit on the contract is likely to be inadequate when it is available.

*AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 226 (3d Cir. 2009)); *Fischer Imaging*, 187 F.3d at 1171 (finding, in a declaratory judgment action, in which the plaintiff had not yet suffered injury, "absent declaratory judgment procedures," the plaintiff's claim would have "come to the court" in a suit on the contract); *Am. Safety Equip. Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968) (same); *see also Tennessee Elec. Power Co.* v. *TVA*, 306 U. S. 118, 137-138, 59 S. Ct. 366, 83 L. Ed. 543 (1939) (identifying a right arising out of a contract as a legal right).

15

Here, the Insurers are specifically seeking a determination of the parties' respective rights under the Policies. Hence, this action is legal. *See id*.; *Simler v. Conner*, 372 U.S. 221, 223 (1963). This factor weighs in favor of the withdrawal of the reference.

### E. The Efficient Use of Judicial Resources Favors Withdrawal of the Reference

Judicial efficiency favors an immediate withdrawal of the reference because the Bankruptcy Court cannot enter a final order on the Claims. *See, e.g., Vacation Vill., Inc. v. Clark County*, 497 F.3d 902, 914 (9th Cir. 2007); *see also Hau Yin To v. HSBC Holdings PLC*, 2017 U.S. Dist. LEXIS 28931, *11 n.4 (S.D.N.Y. Mar. 1, 2017) (withdrawing reference of non-core proceeding in interest of judicial economy).

> Under *Orion*, district courts should consider the most efficient use of judicial resources. The determination as to whether the bankruptcy court could issue a final determination is "pivotal," *Orion*, 4 F.3d at 1102, because if a district court must review recommendations *de novo*, "it would be inefficient to allow the [] proceedings to go forward, knowing that they will have to be substantially repeated"….

*Dynegy Danskammer*, 905 F. Supp. 2d at 533; *see also Geron v. Levine (In re Levine)*, 2012 U.S. Dist. LEXIS 12292 (S.D.N.Y. Feb. 1, 2012) (stating that because of "the *Stern* prohibition on final adjudication by bankruptcy courts of issues involving only private rights — here, judicial economy weighs in favor of withdrawal of the reference at this time."); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011) ("[W]here the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal.").

Withdrawal prevents the duplication of use of judicial resources. "This extra layer of review can be avoided if the matter is withdrawn to the district court." *Baxter v. Sherb & Co., LLP (In re Money Ctrs. of Am., Inc.)*, 2016 U.S. Dist. LEXIS 23051, *7 (S.D.N.Y. Feb. 16, 2016). Thus, "unnecessary costs could be avoided by a single proceeding in the district court." *Id.* (citing *Orion*, 4.F.3d at 1101).

As a recent decision from the District Court of the Northern District of California stated:

> Determining whether it would be more efficient to withdraw the reference requires an analysis of the constitutional backdrop to Congress's creation of the bankruptcy courts. Bankruptcy courts lack jurisdiction "to make final determinations in matters that could have been brought in a district court or a state court." *In re Castlerock Props.*, 781 F.2d 159, 162 (9th Cir. 1986); *see also Northern Pipeline Constr. Co. v. Marathon Pipe*

16

*Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982) ("Marathon"). Such matters are "non-core" proceedings over which bankruptcy courts lack jurisdiction, as a matter of statutory as well as constitutional interpretation. *See* 28 U.S.C. § 157(b)(2) (enumerating "core" proceedings over which bankruptcy judges have jurisdiction).

*Envisage Dev. Partners, LLC v. Patch of Land Lending, LLC*, 2017 U.S. Dist. LEXIS 168281, *9-*10 (N.D. Cal. Oct. 11, 2017).  The District Court went on to hold, as follows:

> Envisage argues that it would be more efficient to litigate the adversary proceeding in bankruptcy court. However, it is difficult to see how this could be so, given that none of the claims in that proceeding involves a core bankruptcy matter. Any decision made by the bankruptcy court would be subject to de novo review by this Court as to both factual findings and legal conclusions. … the issue of rights and liabilities under the loan agreement is conceptually distinct from the issue of how Envisage's liabilities should be discharged in bankruptcy. … Accordingly, judicial efficiency would be best served by withdrawing the reference.

*Id*. at *10-*11 (emphasis added).

In *Rockville*, the Southern District of New York engaged in an extensive analysis of the *Orion* factors – which are similar to the *Security Farms* factors adopted by the Ninth Circuit – and concluded that judicial efficiency required that the reference should be withdrawn *immediately* with respect to the non-core insurance coverage dispute.  2021 U.S. Dist. LEXIS 94233, at *21-25.  The court determined that it would be inefficient to have the bankruptcy court handle pre-trial matters where the bankruptcy court was not yet intimately familiar with the subject matter of the proceeding, and where the claims "arise under contract law, not bankruptcy law.  Contract disputes are the bread and butter of district courts[.]"  *Id.*, at *22.

Allowing the Court to adjudicate the Adversary Proceeding, and oversee **all pre-trial matters related thereto**, would promote judicial economy and expediency.  *Id.; Dev. Specialists*, 2011 U.S. Dist. LEXIS 135990, *18.

Moreover, Insurers have a jury trial right in this case.  *See* Argument, Section V.C. *infra*.  As explained by the District Court of the Central District of California, "[d]ue to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the [claims in this adversary proceeding]".  *Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 Bankr. 837, 838 (C.D. Cal. 1990)); *see also Official Comm. of Asbestos Claimants v. G-I*

17

*Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 217 (D.N.J. 2003) (quoting *In re General Teamsters, Warehousemen and Helpers Union Local 890*, 124 F.3d 999, 1008 (9th Cir. 1997)).

Wherever the Adversary Proceeding goes forward, that court must familiarize itself with the relevant facts. Any assertion that it would be more efficient to conduct this Adversary Proceeding in the Bankruptcy Court does not account for the fact that this Court must ultimately hold the trial and also familiarize itself with all the facts and legal arguments. *Id.* As a result, judicial efficiency weighs in favor of immediate withdrawal of the reference.

**F.    Withdrawal of the Reference Does Not Constitute Forum Shopping**

Withdrawal of the reference to this Court does not constitute forum shopping.

Forum shopping exists where parties "exert inordinate effort for the purpose of seeking not merely a fair trial but a forum they consider more receptive to their cause, and [it] requires courts to squander public resources in adjudicating the propriety of manipulative efforts to gain access to the forum considered most hospitable to the litigants' interests." *Cummings v. U.S.*, 648 F.2d 289, 290 (5th Cir. 1981). Accordingly, courts have only found forum shopping in a motion to withdraw the reference when the motion to withdraw followed adverse decisions in the Bankruptcy Court. Here, the Bankruptcy Court has issued no decisions adverse to the Insurers. Rather than causing the Courts in the District of Nevada to squander resources, Insurers seek a more efficient resolution of the Adversary Proceeding.

Further, timely motions to withdraw the reference reduce the likelihood of forum shopping. *See Burdette v. Emerald Partners LLC*, 2015 U.S. Dist. LEXIS 93127, *8 (W.D. Wash. July 16, 2015). As discussed above, this Motion is timely. *See* Section III, *supra*.

Because the Claims are outside the Bankruptcy Court's core jurisdiction and Insurers have the right to a jury trial, the case must be tried in this Court. *Joseph DelGreco & Co. v. DLA Piper LLP (US) (In re Joseph DelGreco & Co.)*, 2011 U.S. Dist. LEXIS 10972 (S.D.N.Y. Jan. 26, 2011). Therefore, withdrawal of the reference *now* would not promote forum shopping. "Because the Bankruptcy Court cannot enter final judgment on the fraudulent conveyance claims, withdrawal does not promote forum shopping." *Brown Publ. Co. Liquidating Trust v. Brown*, 2017 U.S. Dist. LEXIS 14775 (E.D.N.Y. Feb. 1, 2017); *In re Bill Johnson's Rests., Inc.*, 2016 U.S. Dist. LEXIS 180701 (D.

18

Ariz. 2016) (no forum shopping when a right to a jury trial exists); *Flemmer v. Newell (In re Vill. Concepts, Inc.)*, 2014 U.S. Dist. LEXIS 38751 (E.D. Cal. Mar. 23, 2014) (no forum shopping when only the District Court has a right to enter a final order); *In re The VWE Grp., Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007) ("[W]ithdrawing the reference will not result in forum-shopping because, due to [the] defendants' demand for a jury trial on this non-core claim, the parties have no choice but to try the case in this court."); *Kirschenbaum v. Fed. Ins. Co. (In re Ems Fin. Servs., LLC)*, 491 B.R. 196, 206 (E.D.N.Y. 2013) ("[T]here is no evidence [of] forum shopping. Quite the contrary: . . . given that the claims at issue are all non-core, this case involves a non-core proceeding that could have and probably should have been brought in a district court originally.").

Moreover, it is in the best interest of all parties for the Adversary Proceeding to be heard by a court "that is well-practiced in evaluating common law and statutory causes of action arising under non-bankruptcy law." *See Kohn v. Haymount Ltd. P'ship (In re Int'l Benefits Group, Inc.)*, 2006 U.S. Dist. LEXIS 58487, *11 (D.N.J. Aug. 21, 2006). By seeking withdrawal of the reference, Insurers are seeking only to have the Adversary Proceeding heard in and adjudicated by the proper forum (*i.e.*, the forum that can hold a jury trial and issue a final order). *See, e.g., Joseph DelGreco & Co.*, 2011 U.S. Dist. LEXIS 10972.

Indeed, because each Claim is outside the Bankruptcy Court's core jurisdiction, ***proceeding in the District Court will reduce forum shopping***. *Pelullo v. National Union Fire Ins. Co. (In re Pelullo)*, 1997 U.S. Dist. LEXIS 12372 (E.D. Pa. 1997) (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)).

### G.    Withdrawal of the Reference Would Preserve the Parties' Resources

As mentioned above, withdrawal of the reference from the Bankruptcy Court would economize on the estate's and non-debtors' resources. *Everett v. Art Brand Studios*, LLC, 556 B.R. 437, 445 (N.D. Cal. 2016) ("In this case, 'withdrawal will prevent delay and added costs to the parties by placing the non-core claims in this Court, which can render final judgment.'") (quoting *Rosales v. Rosales (In re Rosales)*, 2013 U.S. Dist. LEXIS 160625, *23 (N.D. Cal. Nov. 4, 2013)); *see also Money Ctrs. of Am.*, 2016 U.S. Dist. LEXIS 23051 at *7. ("[U]nnecessary costs could be avoided by a single proceeding in the district court.") (citing *Orion*, 4 F.3d at 1101). As this Court recently held,

because the Bankruptcy Court can neither enter final judgment nor rule on dispositive motions, withdrawal now would significantly reduce the delays and costs to the parties.

> If withdrawal of the reference is denied, the Court may be required to consider all dispositive motions anew, after the Bankruptcy Court has already held any related proceedings, because the Bankruptcy Court does not have the constitutional authority to finally rule on any of the claims. *See Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 2608-20, 180 L. Ed. 2d 475 (2011). The first and second factors (judicial efficiency, and delay and cost to the parties) therefore weigh in favor of withdrawal.

*Harris v. Davis (In re John Davis Trucking Co.)*, 2017 U.S. Dist. LEXIS 109270, 6-7 (D. Nev. July 12, 2017).

Moreover, where, as here, "non-core issues predominate (*i.e.*, claims the bankruptcy court cannot finally determine), withdrawal may promote efficiency because a single proceeding in the district court could avoid unnecessary costs implicated by the district court's de novo review of non-core bankruptcy determinations". *Hopkins v. Nakamoto (In re Hoku Corp.)*, 2015 U.S. Dist. LEXIS 157302, *6 (D. Idaho Nov. 18, 2015) (citing *Orion*, 4 F.3d at 1008-09).

Because the Bankruptcy Court can neither enter a final order nor conduct the jury trial to which Insurers are entitled, there would be significant savings to the parties in costs and time from litigating issues only once. Litigating issues both in the Bankruptcy Court and again in this Court would be inefficient for all parties. Thus, this factor weighs in favor of withdrawal of the reference.

### H. Withdrawal Would Not Affect the Uniformity of Bankruptcy Administration

Where claims do not implicate matters within the Bankruptcy Court's core jurisdiction by raising substantive issues of bankruptcy law, withdrawal of the reference would not affect the uniformity of bankruptcy administration.

"The third factor (uniformity of bankruptcy administration) is not implicated in this case because there are no core claims in the Adversary Complaint." *Harris v. Davis (In re John Davis Trucking Co.)*, 2017 U.S. Dist. LEXIS 109270 (D. Nev. July 12, 2017); *see also Flemmer v. Newell (In re Vill. Concepts, Inc.)*, 2014 U.S. Dist. LEXIS 38751, *8 (E.D. Cal. Mar. 23, 2014) (same).

> To determine if maintaining the reference promotes the uniformity of bankruptcy administration, this Court must consider the nature of RFC's claim. *See, e.g., Dynegy*, 905 F. Supp. 2d at 533. Here, the contract claims are based in New York state law and do not concern substantive bankruptcy law. Therefore, this factor generally would weigh in favor of withdrawing the reference.

1    *Residential Funding Co., LLC v. UBS Real Estate Secs., Inc*., 2015 U.S. Dist. LEXIS 29952

2    (S.D.N.Y. Mar. 6, 2015).  Moreover, when claims are based on state law, as here, withdrawal of the

3    reference does not affect the uniformity of bankruptcy administration.  *Dynegy Danskammer,* 905 F.

4    Supp. 2d at 533 ("Courts routinely have found no benefit [to uniformity of bankruptcy administration]

5    where claims are based on state law.")  "The … claims in this case are based in California state law

6    and are completely independent of bankruptcy law; they are non-core."   *Hamilton v. Willms*, 2016

7    U.S. Dist. LEXIS 46758 (E.D. Cal. Apr. 5, 2016) (finding uniformity of bankruptcy administration

8    not implicated by the District Court's consideration of non-core issues).

9          Here, also, all of the Claims arise under state law.  They do not arise under substantive

10    bankruptcy law.  *See e.g., Kirschenbaum*, 491 B.R. at 206 ("the Court finds that the resolution of this

11    matter [*i.e.*, contract claims] does not require familiarity with the Bankruptcy Proceeding or

12    bankruptcy law."); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457,

13    473 (S.D.N.Y. 2011) ("Their resolution will at most have the effect of augmenting the bankruptcy

14    estate; it will have no impact that would require uniform, coordinated adjudication before the

15    Bankruptcy Court. Nor does the Bankruptcy Court have any special expertise in resolving the New

16    York law claims at issue here."); *M Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, 2008 U.S. Dist.

17    LEXIS 50247, *11 (S.D.N.Y. June 26, 2008) ("Withdrawing the reference would not hamper uniform

18    administration of the bankruptcy code because this case is a 'non-core' proceeding."); *see also In*

19    *Dynegy Danskammer*, 905 F. Supp. at 533-34 (S.D.N.Y. Nov. 7, 2012) (finding that because the

20    claims were based on state law there was no indication that any bankruptcy-specific legal analysis

21    would be required).

22          Because the Claims all arise under non-bankruptcy law, a determination of the Claims also

23    does not require familiarity with bankruptcy law.  Therefore, the Bankruptcy Court does not have any

24    special expertise with respect to the Claims.  The Claims are all within the Bankruptcy Court's non-

25    core jurisdiction, and the Bankruptcy Court cannot enter final orders on dispositive motions, a final

26    judgment on the Claims, or hold the jury trial to which Insurers are entitled.  Although Bankruptcy

27    Courts may have experience resolving state law claims, such experience is not bankruptcy specific.

28    Thus, withdrawing the reference would not harm the uniformity of bankruptcy administration.

Therefore, this factor weighs in favor of withdrawing the reference. *Money Ctrs. of Am.*, 2016 U.S. Dist. LEXIS 23051 (withdrawal granted where uniformity of bankruptcy administration was not relevant).

## VI.    CONCLUSION

WHEREFORE, Insurers respectfully request that the Court grant the Motion and withdraw the reference of this Adversary Proceeding.

Dated: May 11, 2023                                     **DUANE MORRIS LLP**

By:    /s/  *Dominica C. Anderson*
Dominica C. Anderson (SBN 2988)
Daniel B. Heidtke (SBN 12975)
Russell W. Roten (*Pro Hac Vice Application Pending*)
Jeff D. Kahane (*Pro Hac Vice Application Pending*)

Attorneys for Plaintiffs *Ohio Security Insurance Company, Peerless Indemnity Insurance Company, The Ohio Casualty Insurance Company, and West American Insurance Company*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2023, I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **MOTION TO WITHDRAW THE REFERENCE** (postage prepaid if by U.S. Mail) and addressed to all parties and counsel as identified on the CM/ECF-generated Notice of Electronic Filing.

I hereby certify that a copy was also sent on May 11, 2023 via U.S. Mail to:

AFFINITYLIFESTYLES.COM, INC.
d/b/a REAL WATER
REAL WATER, INC.
REAL WATER OF TENNESSEE, LLC
c/o Brent Jones
18603 Legend Oaks Dr.
Magnolia, TX 77355

*/s/ Janice Reeder*
Janice Reeder
An employee of DUANE MORRIS LLP

DM1\14138279.1